IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. NOS.  05-10663 |
| | ) | 05-10664 |
| Plaintiff-Appellee, | ) | 05-10722 |
| | ) | **05-10723** |
| vs. | ) | |
| | ) | D.C. NO. CR-02-00133 ER (04) |
| FRED M. ORTIZ, *ET AL.* | ) | (District of Hawaii) |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

---

**OPENING BRIEF OF DEFENDANT-APPELLANT FRED ORTIZ**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII
The Honorable Edward Rafeedie
United States District Judge


Barry D. Edwards 4509
1431 Alencastre Street
Honolulu, Hawaii 96816
Tele.  (808) 737-2100
Fax (808) 732-4499
e-mail: barrydedwards@gmail.com

Attorney for Defendant-Appellant
FRED M. ORTIZ


**APPENDIX A**

# JURISDICTION

On May 13, 2005, the jury returned a general verdict of guilty against Mr. Ortiz as to Count 1 of the Second Superseding Indictment, which charged Conspiracy to Defraud the United States in violation of 18 U.S.C. 371. [E.R.[1] 1; Tr.[2] Vol. 8, 5/13/05, pp. 67-70.]

Judgment and sentence were entered against Mr. Ortiz by Amended Judgment in a Criminal Case filed September 30, 2005, amending the Judgment in a Criminal Case filed September 16, 2005, pursuant to the District Court's sentence announced in open court on August 29, 2005. [E.R. 188, 198.]

On September 23, 2005, Mr. Ortiz, joined by the other defendants, timely filed his Joint Notice of Appeal from the District Court's judgment and sentence pursuant to Rules 4(b)(1)(A)(i) and 4(b)(2). [E.R. 195.]

This Court has jurisdiction under 28 U.S.C. 1291.

---

[1]"E.R." means defendant's excerpts of record.

[2]"Tr." means the transcript for the proceedings conducted on the date stated.

**BAIL STATUS**

Mr. Ortiz self-surrendered at FCI Herlong SCP as ordered on October 11, 2005, and is serving his 36 month sentence. His projected release date is October 10, 2008.


**ISSUES PRESENTED**

**1. Was the trial court's refusal to instruct the jury regarding Mr. Ortiz' first amendment free speech defense reversible error?**


**2. Was the trial court's refusal to instruct the jury that open advocacy of law violation does not violate the "defraud" clause of 18 U.S.C. 371 reversible error?**

2

## STATEMENT OF THE CASE

Mr. Ortiz appeals from the final judgment and sentence imposed by the trial court, Honorable Edward Rafeedie, Senior District Judge presiding, after the jury's verdict of guilt on Count 1 of an indictment charging Conspiracy to Defraud the United States under 18 U.S.C. 371.

The trial court refused to instruct the jury on two proffered defense theories, despite ample evidence in the record to justify them– the theories were:

a.  The free speech clause of the first amendment permitted Mr. Ortiz to express his opinion that filing income taxes was purely voluntary without any criminal sanction; and,

b.  It was not a violation of the "defraud clause" of 18 U.S.C. 371 for Mr. Ortiz openly to advocate his opinion.

Mr. Ortiz seeks reversal of his conviction and vacation of his sentence.

3

## STATEMENT OF FACTS

Beginning in about 1977, Mr. Ortiz began researching materials and forming the basis of his opinion that filing annual personal federal income tax returns is not required by law– *i. e.*, that filing such returns is purely voluntary. [E. R. 137; Tr. 5/11/05, pp. 240-246.]  After first considering writing a book on the subject, he soon learned that there were too many books already published. Instead, Mr. Ortiz wrote an opinion letter describing how he arrived at the conclusion that filing federal income tax returns was purely voluntary, and began offering the opinion letter to anyone who was interested, including the Internal Revenue Service's agents in Hawaii. [E.R. 147; Tr. 5/12/05, pp. 23-32.]

During the late 1980's Mr. Ortiz publicly argued with Internal Revenue Service agents, and with Hawaii U. S. Senator Daniel K. Inouye, about his "income tax returns are purely voluntary" opinion, exchanging letters to the editor in the island of Hawaii newspaper "West Hawaii Today" advocating his opinion and disputing the contrary views expressed by the IRS and the Senator.  [E.R. 170-185; Tr. 5/12/05, pp. 24-32.]

Beginning in about 1985 and continuing intermittently until 1999, Mr. Ortiz permitted defendant Lamarr Hardy to offer Mr. Ortiz' opinion letter to clients of

4

Hardy's tax avoidance seminar enterprise The Research Foundation ["TRF"]. [E. R. 137; Tr. 5/11/05, pp. 240-246; E. R. 55, 74, 81.] In return for providing his opinion letter to TRF's clients, Mr. Ortiz was paid between $25 and $50 per letter. When asked, Mr. Ortiz also provided TRF clients' employers with a letter stating his opinion that the employer was not required to withhold income tax from the client employee's paycheck. [E.R.56; Tr. Vol. 5/12/05, at pp. 32-34; E. R. 77.] There was no evidence that Mr. Ortiz ever joined TRF. Mr. Ortiz testified that he never joined. [E.R. 69; Tr. 5/12/05, p. 45.]

There was also no evidence that Mr. Ortiz knew whether the persons he sent opinion letters were contemplating not filing, or in fact whether they had or had not previously filed, annual federal income tax returns. There was no evidence that Mr. Ortiz knew whether the recipients of his opinion letters would ultimately agree or disagree with him. When, or if, anyone reading Mr. Ortiz' opinion decided not to file their federal income tax returns could occur months or years later, if ever.

Several of the government's witnesses who became clients of TRF testified that they reviewed information that was generally available from other public sources, in addition to TRF materials and various professionals' opinions, before they made a decision whether or not to file income tax returns, or to file an

5

"annual statement" in lieu of such returns. E. R. 98; Tr. 5/6/05, pp. 143-145, 165-169, 191, 212-218, 231-245.]

TRF provided reams of materials to its clients, including a complete copy of the Internal Revenue Code and of Black's Law Dictionary. Notably, one of the first TRF pamphlets sent to prospective TRF clients prominently provided a disclaimer warning that prospective clients of TRF should first carefully evaluate for themselves the materials provided and seek out their own legal and accounting professionals for independent advice on the views expressed. [E. R. 79-80.]

There was no evidence that Mr. Ortiz told anyone that they should violate the tax laws, or that he assisted anyone in preparing improper or false tax returns. There was no evidence that Mr. Ortiz himself ever filed an "annual statement" in lieu of an annual income tax return, or that he advocated such action by others.

Defense counsel tendered proposed instructions on Mr. Ortiz' First amendment free speech defense, and his "open advocacy cannot be deceitful under the defraud clause of 18 U.S.C. 371" theories. The trial court refused to instruct the jury on either defense theory, even after the government made a closing argument that was directly responsive to the proffered and refused first amendment defense. [E. R. 32, 40, 161-169; Tr. 5/12/05, pp. 65-67, 110, 136-138.]

6

The jury found Mr. Ortiz guilty as charged.

This appeal followed.

## SUMMARY OF ARGUMENT

Mr. Ortiz was entitled to assert the first amendment free speech clause in his defense. He was also entitled to the defense that his opinion did not violate the law under which he was charged, 18 U.S.C. 371, since even open advocacy of law violation does not violate the "defraud clause" of that statute.

The trial court's refusal so to instruct the jury was reversible error.

## ARGUMENT

## I. STANDARDS OF REVIEW

Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo. *United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004). Whether the district court's instructions adequately presented the defendant's theory of the case is reviewed de novo. *United States v. Somsamouth*, 352 F.3d 1271, 1274 (9th Cir. 2003).

7

## II. DISCUSSION

### a. The first amendment free speech defense.

Mr. Ortiz sent his opinion letter to TRF clients, among others including the IRS in Honolulu and Senator Daniel K. Inouye.  His opinion letter said that a person was not required by law to file an annual federal income tax return because the filing of such a return was purely voluntary.  The opinion letter described Mr. Ortiz' rationale for his "filing is purely voluntary" conclusion, but did not advocate for any particular action one way or the other by its recipient.

Mr. Ortiz was entitled to state his opinion under the first amendment's free speech clause.  All of the expressions in his opinion letter were Constitutionally protected as free speech unless *both his intent and the tendency of his words was to produce or incite an imminent lawless act, one likely to occur.  Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 431 (1969)*; United States v. Freeman,* 761 F.2d 549 (9th Cir. 1982).

Whether any person receiving Mr. Ortiz' opinion letter decided to agree with his conclusions, and when they would act on their decision if ever, were legitimate considerations for the jury in evaluating the "tendency of his words to produce or incite an imminent lawless act, one likely to occur." The trial record confirmed that:

8

1. The government's witnesses who decided not to comply with the tax law, before or after joining TRF or receiving Mr. Ortiz' opinion letters, did so after they had time and the full opportunity to analyze and reflect upon their decisions.

2. These witnesses ultimately made their decisions independently, *without the incitement to imminent lawlessness* required by law to overcome Mr. Ortiz' first amendment right to express his opinion.

3. Mr. Ortiz had no personal knowledge of their decisions.

4. Mr. Ortiz publicly and openly advocated his opinion that filing federal income tax returns was purely voluntary.

There was ample evidence in the trial record upon which to base Mr. Ortiz' free speech defense, but the jury was not instructed that it could consider the first amendment in reaching its verdict. This was reversible error.

> Where there is some evidence . . . that the purpose of the speaker or the tendency of his words are directed to ideas or consequences remote from the commission of the criminal act, a defense based on the First Amendment is a legitimate matter for the jury's consideration. . . . Though it was weak, there was some evidence . . . from which the jury might infer that Freeman directed his comments at the unfairness of the tax laws generally, without soliciting or counseling a violation of the law in an immediate sense. In some instances he made statements that, at least arguably, were of abstract generality, remote from advice to commit a specific criminal act. Also, he told some audiences to verify his advice because, as a non-lawyer, he had reached conclusions based upon his untrained reading of the Constitution. A jury might have thought those statements, in

9

the context of the entire case, tended to diminish the imminence of the unlawful activity. . .

*United States v. Freeman*, 761 F.2d 549, 551-552 (9th Cir. 1985).

Whether Mr. Ortiz' opinion letter could ever satisfy the black letter requirement of "incitement of an imminent unlawful act, one likely to occur" is made even more doubtful under *McCoy v. Stewart*, 282 F.3d 626, 630-631 (9th Cir. 2002):

> Under *Brandenburg* [*citation omitted*] timing is crucial, because speech must incite imminent lawless action to be constitutionally proscribable. Thus, several years later in *Hess v. Indiana*, the Court made explicit what was implicit in *Brandenburg*. A state cannot constitutionally sanction 'advocacy of illegal action at some indefinite future time.' [*Citation omitted.*]
>
> * * *
>
> McCoy's Opening Brief avers that
>> No witness at McCoy's trial testified that McCoy ever told him or her to go out and commit a crime. No witness testified that he or she was incited by hearing McCoy's words. No evidence adduced at the trial suggested that McCoy was offering anything more than his own belief or blueprint on how a successful gang should be run. The record bears out his assertions.
>
> Far from demonstrating a specific intent to further illegal goals, McCoy's speech appears to fit more closely the profile of mere abstract advocacy of lawlessness.

The government presented no evidence that Mr. Ortiz told anyone to commit a crime. As in *McCoy*, no witness testified that he or she failed to file income tax returns immediately after reading Mr. Ortiz' opinion letter. Nor did

10

any witness testify that they decided to file an "annual report" in lieu of an income

tax return immediately after reading and deciding to agree with Mr. Ortiz' opinion.

In *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), this Court

discussed the requirement of more than mere abstract advocacy of law violation

for imposition of criminal sanction under the first amendment:

> Even if the defendants knew that a taxpayer who actually performed the actions they advocated would be acting illegally, the first amendment would require a further inquiry before a criminal penalty could be enforced. With the exception of Durst, no defendant actually assisted in the preparation of any individual tax return. Rather, they merely instructed an audience on how to set up a particular tax shelter. . . .
>
> * * *
>
> Nothing in the record indicates that the advocacy practiced by these defendants contemplated imminent lawless action. Not even national security can justify criminalizing speech unless it fits within this narrow category, certainly concern with protecting the public fisc, however laudable, can justify no more.
>
> * * *
>
> We conclude that proof of the requisite intent to violate section 7206(2) is not shown in this record.
>
> * * *
>
> The government's failure to present evidence as to the appellant's specific intent to violate the underlying substantive count requires us to set aside the convictions premised upon 18 U.S.C. 371.

**b. The "open advocacy" defense.**

Mr. Ortiz' "open advocacy" defense instruction should also have been given

under the rationale of *United States v. Caldwell*, 989 F.2d 1056 (9th Cir. 1993):

11

> The Supreme Court has made it clear that 'defraud' [under the defraud clause of 18 U.S.C. 371] is limited only to wrongs done 'by deceit, craft or trickery, or at least by means that are dishonest.' Obstructing government functions in other ways - for example, by violence, robbery *or advocacy of illegal action* - can't constitute 'defrauding.' [Citations omitted; emphasis added.]

Mr. Ortiz' opinion letter did not advocate that persons violate the tax laws. On the contrary, the letter simply laid out his opinion and gave a blueprint showing how Mr. Ortiz concluded that the Internal Revenue Code and the Privacy Act failed to make an individual liable to file an annual federal income tax return. Mr. Ortiz' abstract opinion did not advocate law violation. His letter gave his opinion and his rationale, but did not advocate action by its recipient one way or the other.

Even if Mr. Ortiz' opinion letter could be characterized as advocacy of lawlessness, under *Caldwell* his conduct did not violate 18 U.S.C. 371's defraud clause. *See Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). The letter could only be characterized as abstractly advocating unlawful conduct at some indefinite future time—certainly *not imminent lawlessness, likely to occur.*

# CONCLUSION

The government contended at the trial that Mr. Ortiz's opinion letters were the basis of his crime, since some government witnesses who filed troublesome "annual statements" in lieu of personal U. S. income tax returns attached his opinion letter to justify their position with the IRS that they were not required to file.   Yet the government offered no proof that Mr. Ortiz advocated such action, or that the "annual returns" were the imminent result of incitement to action–because no such incitement to imminent lawless action was contained within Mr. Ortiz' letters.

Even if Mr. Ortiz had openly advocated that taxpayers not file their annual federal income tax returns, and instead that they take other action in lieu of filing– such as filing "annual statements,' that would not have been enough to criminalize his conduct under 18 U.S.C. 371's "defraud clause."

Open advocacy of law violation is not a crime under 18 U.S.C. 371, even if such advocacy meets the *Brandenburg* test of "incitement of an imminent unlawful act, one likely to occur." Mr. Ortiz's letters met neither requirement for criminality.  They simply stated his opinion that the filing of annual U. S. personal income tax returns is purely voluntary.  Nowhere did he advocate that the law be violated.

13

The trial court should have instructed the jury on both of these defense theories. Its refusal to so instruct fundamentally prejudiced Mr. Ortiz' defense, and was reversible error. *See United States v. Miguel*, 335 F.3d 995 (9th Cir. 2003).

For the reasons stated, Mr. Ortiz' conviction should be reversed and his sentence vacated.

Dated at Honolulu, Hawaii: February 25, 2006.

s/ BDE

Barry D. Edwards,
attorney for defendant-appellant

14

## CERTIFICATE OF COMPLIANCE

I certify that this brief is proportionately spaced in 14-point Times New Roman typeface. It contains 2,666 words, with an average of less than 191 words per page.

Dated at Honolulu, Hawaii: February 25, 2006.

s / B D E

Barry D. Edwards,
attorney for defendant-appellant

## STATEMENT OF RELATED CASES

Counsel is unaware of any cases related to this matter presently pending before this Court.

Dated at Honolulu, Hawaii: February 25, 2006.

s/ BDE

Barry D. Edwards,
attorney for defendant-appellant

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief and of the defendant-appellant's excerpts of record was served by mail upon the following today:

Clare Connors, Esq.
Assistant United States Attorney
PJKK Federal Building, Suite 6-100
300 Ala Moana Boulevard
Honolulu, HI 96850

Gregory V. Davis, Esq.
U. S. Department of Justice, Tax Division
P. O. Box 502
Washington, D.C. 20044

Attorneys for Plaintiff
UNITED STATES OF AMERICA;

William A. Cohan, Esq.
8910 University Center Lane, Suite 550
San Diego, CA 92122
Attorney for Appellant Ursula A. Supnet

Richard D. Gronna, Esq.
Haseko Center
820 Mililani Street, Suite 502
Honolulu, HI 96813
Attorney for Michael L. Kailing

Lynn E. Panagakos, Esq.
345 Queen Street, 2nd Floor
Honolulu, HI 96813
Attorney for Appellant Royal LaMarr Hardy

and, that an the original and fifteen copies of the foregoing brief and five copies of defendant-appellant's excerpts of record were mailed by certified mail, return receipt requested, to the following today:

Office of the Clerk
U.S. Court of Appeals
for the Ninth Circuit
P.O. Box 193939
San Francisco, California  94119-3939

DATED:   February 27, 2006.


s/ BDE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK, US COURT OF APPEALS
FOR THE NINTH CIRCUIT
P.O. Box 193939
SAN FRANCISCO, CA
94119-3939

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

RECEIVED

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FILED   MAR - 2 2006

DOCKETED

3. Service Type   DATE   INITIAL
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7005 1820 0002 8738 1172

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540